## First State Bank of Pineville v. Parrott.

(Decided Oct. 5, 1934.)

E. B. WILSON for appellant.

J. D. TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On October 11, 1924, the appellee, Mae Parrott, and C. B. Parrott, her husband, executed and delivered to Josh Parrott their negotiable promissory note for the sum of $2,200, due twelve months thereafter. To secure the payment of this note, Mae Parrott and her husband executed a mortgage on a house and lot owned by her in Barbourville, Ky. Josh Parrott, before maturity, assigned and transferred the note in due course to E. F. Baker, thus making the five-year statute of limitations (Ky. Stats. sec. 2515) applicable thereafter to any suit upon such note. Holt Bros. Mining Co. v. Stewart et al., 250 Ky. 199, 61 S. W. (2d) 1073. An indorsement on the back of the mortgage recited that it was assigned by Josh Parrott to E. F. Baker on March 20, 1925. On

March 23, 1925. the First State Bank of Pineville, Ky., appellant herein, and hereafter referred to as the bank, loaned to E. F. Baker $1,250. The Mae and C. B. Parrott note above mentioned was pledged as collateral security for the payment of this loan. On February 15, 1926, Baker assigned the aforesaid mortgage to the bank. On February 23, 1926, the bank made a loan to C. B. Parrott in the sum of $1,900, and took from him his individual note for this amount due six months thereafter. Out of this loan of $1,900, there was used the sum of $1,250 to satisfy the note owing by E. F. Baker to the bank. C. B. Parrott seems to have made some other payment to Baker, who surrendered to him the $2,200 note of Mae Parrott and C. B. Parrott. C. B. Parrott attached this $2,200 note as collateral to his individual note of $1,900. C. B. Parrott's note was renewed semiannually until February 15, 1932. At this time another renewal note was sent to him for execution, but he failed to sign it. Thereupon this suit was brought on April 6, 1932, on the $2,200 note, the bank, however, seeking to recover only the sum of $1,900, with interest from February 15, 1932. It also sought a foreclosure of the mortgage given to secure this note. The $2,200 note filed with the petition bore on its back these indorsements:

"Josh Parrott,
"Paid $25.00, Oct. 15, 1925,
"Paid $398.90, Dec. 26th, 1927, to N. R. Patterson,
"Balance due on this note on Aug. 15th, 1926, is $1900.00,
"Interest paid to Feb. 15th, 1932."

After the institution of this action, C. B. Parrott died, and it was duly revived against his estate in the name of Mae Parrott, administratrix with will annexed of C. B. Parrott. Just how the bank arrived at the conclusion it did that when suit was filed on this $2,200 note in 1932 there was only due upon it the sum of $1,900 is incomprehensible in the light of the indorsements on the back of the note. The confusion is not cleared by any evidence or testimony in the case. The only testimony we have is the deposition of Mr. George H. Reese, president of the bank, who testified from the records of the bank, having no personal knowledge of the transactions embodied in those records. The evi-

dence is silent as to any knowledge on the part of Mae Parrott of any of the transactions we have detailed above beyond, of course, the execution by her and her husband of the $2,200 note secured by the mortgage on her property to Josh Parrott. The evidence does show that the interest on C. B. Parrott's individual note of $1,900 was paid by the checks of Mae Parrott. The interest thus paid by her was on a principal sum of $1,900, not on a principal sum of $2,200, or that sum with any of the credits or debits embodied in the indorsements on the back of the $2,200 note. There is no showing whatever that these checks of Mae Parrott were sent by her to apply on what we call the $2,200 note to distinguish it from C. B. Parrott's individual note of $1,900. There is no showing that she knew that the $2,200 note had been pledged as collateral security to this $1,900 note, or that it had not been satisfied when Baker was paid off, or indeed any evidence to show that she knew her $2,200 note had passed out of the ownership or possession of Josh Parrott. It is sought to infer from the fact that her checks paid the interest on the $1,900 note as it fell due, and that the $2,200 note bore an indorsement that there was on August 15, 1926, only $1,900 due thereon, that she was paying the interest on her note and knew that it had been pledged as collateral security on her husband's individual note. But there is no showing that Mae Parrott knew about this indorsement on the back of the $2,200 note. It plainly does not accord with the facts as expressed in the other indorsements on the note. Undoubtedly this indorsement was put upon the note by the bank with no evidence to show that it had brought home to Mae Parrott any notice that it had done so. We cannot say that the simple fact that a wife who seems to have had money pays the interest due on an obligation of her husband, who, as discovered later when he dies, is insolvent, is any proof that the wife was doing other than trying to help her consort on his individual obligations. It is no proof in and of itself that she is keeping alive by interest payments her own note which the proof fails to show that she knew had passed out of the ownership or possession of its original payee. This being true, in the light of the facts and circumstances of this case, Mae Parrott's checks paying the interest on her husband's obligation was not a keeping alive of her $2,200 note, and hence the plea of limitations which she interposed

to the suit against her on this latter obligation was a valid defense, and the lower court did not err in dismissing the plaintiff's petition.

The judgment is affirmed.

Whole court sitting.